# In the United States Court of Federal Claims

BID PROTEST
No. 15-1015C
(Filed Under Seal: November 4, 2015 | Reissued: November 20, 2015)[*]

| | |
|---|---|
| AvKARE, INC., ) | Keywords: Motion to Supplement the Administrative Record; FSS Contracts; Commercial Sales Practices; 48 C.F.R. § 515.408; Disparate Treatment; Lack of Good Faith. |
| Plaintiff, ) | |
| v. ) | |
| THE UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

*James S. Phillips*, Argus Legal, LLC, McLean, VA, for plaintiff, with whom were *James S. DelSordo*, Of Counsel, and *Julie M. Nichols*, Of Counsel.

*James W. Poirier*, Trial Attorney, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Martin F. Hockey, Jr.*, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

Before the Court is plaintiff AvKARE, Inc.'s (AvKARE) Motion to Supplement the Administrative Record, ECF No. 19. The Court held oral argument on the motion on November 2, 2015. For the reasons set forth below, AvKARE's motion is **DENIED**.

## I.     Background

AvKARE presently holds a Federal Supply Schedule (FSS) contract with the United States Department of Veterans Affairs (VA) to supply generic pharmaceuticals to VA purchasers. See Compl. ¶ 43, ECF No. 1. The contract solicitation for the supply schedule at issue, Schedule 65 IB, is perpetually open, and contract holders must submit a new offer every five years to renew their contracts. See Compl. ¶ 15. On October 31,

---

[*] This Opinion was originally issued under seal, and the parties were given the opportunity to request redactions. Neither party requested redactions, and the opinion is now being reissued in full.

2014, AvKARE submitted a renewal offer, as its contract was set to expire on March 31, 2015.[1] Administrative Record (AR) Tabs 13–24.

As required by 48 C.F.R. § 515.408(b), the current Schedule 65 IB solicitation requires offerors to provide certain information about their commercial sales practices (CSP)—that is, their sales to non-government customers. AR Tab 5 at 197–204. If an offeror is considered a "dealer/reseller without significant sales to the general public" rather than a "manufacturer" of the items it wishes to sell, the solicitation requires that the offeror also provide CSP information from the items' manufacturers. Id. at 202. When AvKARE submitted its renewal offer, it did not include CSP information from any entity other than itself because it considers itself the manufacturer of the items it wishes to sell. See Compl. ¶¶ 28–29; AR Tab 360 at 21675 (stating that "under the FDA's most relevant regulations that allow an entity to sell to the Government, AvKARE is a manufacturer"). In evaluating AvKARE's renewal offer, however, the VA determined that AvKARE was not a manufacturer for purposes of the solicitation's CSP requirements. See AR Tab 367 at 21696. Following negotiations, the VA's contracting officer (CO) informed AvKARE on September 3, 2015, that the VA would not proceed with further evaluation of its offer until AvKARE provided the required manufacturers' CSP information. AR Tab 417 at 22496.

On September 11, 2015, AvKARE filed a complaint in this Court alleging (1) that the VA improperly refused to consider AvKARE's offer to renew its FSS contract, and (2) that the VA also improperly refused to grant certain requests for modification to AvKARE's existing contract. Compl. ¶¶ 44–71. According to AvKARE, the VA has routinely granted requests for modification made by similar pharmaceutical suppliers holding VA FSS contracts issued under the same solicitation. Id. ¶¶ 72–79. AvKARE requested relief on several grounds, including (1) that the VA's refusals were the result of bad faith and bias against AvKARE, id. ¶¶ 80–86, 102–06; (2) that the VA's refusals constituted an unlawful de facto debarment, id. ¶¶ 87–92; (3) that the VA's refusals were arbitrary and capricious, id. ¶¶ 93–97; and (4) that the VA breached the obligation of good faith and fair dealing, id. ¶¶ 98–101.

Following a status conference, the government compiled and submitted the AR, which runs more than 22,000 pages. ECF Nos. 16–17. The AR includes, among other things, copies of AvKARE's renewal offer and its other submissions to the VA related to that offer; copies of the VA's correspondence with AvKARE regarding the offer; and

---

[1] As the March 31, 2015, deadline was approaching, AvKARE filed a bid protest in this Court. See Compl., AvKARE, Inc. v. United States, No. 15-cv-216, ECF No. 1 (March 3, 2015). The government subsequently agreed to extend AvKARE's contract through September 31, 2015, and AvKARE voluntarily dismissed the case. See Notice of Voluntary Dismissal, AvKARE, No. 15-cv-216, ECF No. 17. After AvKARE filed this bid protest in September 2015, the government agreed to a second extension, which will expire on January 31, 2016.

2

copies of the VA's internal deliberations regarding its determination that AvKARE is not the manufacturer of the items it wishes to sell. See Index of AR, ECF No. 17.

On October 20, 2015, AvKARE moved to supplement the AR. Pl.'s Mot. to Suppl. the R., ECF No. 19. It seeks to have three categories of documents added to the AR. See Pl.'s Mem. in Supp. of its Mot. to Suppl. the R. (Pl.'s Mem.), ECF No. 20; Pl.'s Proposed Suppl. to the Admin. R. (Pl.'s Suppl.), ECF No. 21. The first category includes documents that purportedly demonstrate that the prices AvKARE has offered the government in its requests for modification and its renewal offer are reasonable. Pl.'s Mem. at 2–4; Pl.'s Suppl. Exs. 1, 7–69. The second category includes documents purportedly showing that the VA has treated AvKARE differently than other generic medication suppliers that repackage bulk pharmaceuticals for re-sale to the government, whose requests for modification the VA has allegedly routinely and rapidly granted. Pl.'s Mem. at 5–7; Pl.'s Suppl. Exs. 3–6, 70. The third category includes just one document, an affidavit that purportedly illuminates an institutional bias within the VA against companies like AvKARE that may lack significant commercial sales. Pl.'s Mem. at 7–8; Pl.'s Suppl. Ex. 2. In addition, AvKARE seeks to have the exhibits it attached to its original pleadings in this case added to the administrative record. Pl.'s Mem. at 8. As discussed in more detail below, the Court does not believe that any of these documents are needed to permit it to conduct an effective review of the issues presented in this case.

## II.   Discussion

### A.   Applicable Standard

The Federal Circuit has made clear that the "focal point" of the Court's review of an agency's procurement decision "should be the administrative record already in existence, not some new record initially made in the reviewing court." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). "Limiting review to the record actually before the agency" helps courts guard against "using new evidence to 'convert the 'arbitrary and capricious' standard'" applicable to bid protest actions "'into effectively de novo review.'" Id. at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (Fed. Cl. 2000)). Accordingly, a court should not allow supplementation of the administrative record unless "'the omission of extra-record evidence precludes effective judicial review'" of the agency's decision. Id. (quoting Murakami, 46 Fed. Cl. at 735). Put differently, courts allow supplementation only when the existing record "will not permit an effective judicial review of the procurement in question." Office Depot, Inc. v. United States, 94 Fed. Cl. 294, 296 (Fed. Cl. 2010).

In situations where an agency's decision has been tainted by bias or bad faith, courts recognize that "the administrative record frequently will not be complete or suffice to prove or disprove the allegation." Pitney Bowes Gov't Solutions, Inc. v. United States, 93 Fed. Cl. 327, 332 (Fed. Cl. 2010); see also Inforeliance Corp. v. United States, 118 Fed. Cl. 744, 747 (Fed. Cl. 2014) (noting that documentation of bad faith "by its very nature would not be found in an agency record"); Beta Analytics Int'l, Inc. v. United States, 61 Fed. Cl. 223, 226 (2004) ("[R]are indeed would be the occasions when

3

evidence of bad faith will be placed in an administrative record . . . ."). Even so, because agency decisions are "entitled to a presumption of regularity," Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003), a plaintiff wishing to "put facts relating to bad faith in play" must first make a "threshold showing of either a motivation for the [g]overnment employee in question to have acted in bad faith or conduct that is hard to explain absent bad faith." Beta Analytics, 61 Fed. Cl. at 226; see also Pitney Bowes, 93 Fed. Cl. at 332 ("[T]he court will entertain extrarecord evidence . . . when there has been a 'strong showing of bad faith or improper behavior' such that . . . the administrative record cannot be trusted." (quoting Alabama Aircraft Indus., Inc. v. United States, 82 Fed. Cl. 757, 766 (Fed. Cl. 2008))). Such a showing must "rest on 'hard facts,' not merely innuendo or suspicion." Inforeliance, 118 Fed. Cl. at 748 (quoting Int'l Res. Recovery, Inc. v. United States, 61 Fed. Cl. 38, 43 (Fed. Cl. 2004)).

B.  Application of Standard

After careful review, the Court has determined that the documents in the proposed supplement to the AR are not required to permit the Court to effectively review the agency decisions at issue in this case. First, as the government observes, the VA did not reach the point in its evaluation of AvKARE's renewal offer at which it would determine whether AvKARE's prices are reasonable. See Def.'s Opp'n to Pl.'s Mot. to Suppl. the Admin. R. at 7, ECF No. 22. Instead, once it determined that AvKARE was not a manufacturer, the VA proceeded no further because AvKARE did not submit the manufacturers' CSP information required by the solicitation. Id.; see also AR Tab 417 at 22496 (VA decision letter stating that "[i]n order to proceed with evaluation of your offer, you must provide manufacturer CSP data"). Therefore, the documents in the first category, which relate to the reasonableness of AvKARE's prices, are not needed to conduct an effective review of the agency's decisions at issue in this case. Accordingly, the Court will not supplement the AR to include the documents in the first category.

Further, the documents in the second and third categories, which purportedly relate to the VA's disparate treatment of AvKARE and its lack of good faith, fail to meet the required threshold because their contents are too general to call into question the motivations behind the agency's decisions or to point to conduct that is hard to explain absent bad faith. For instance, several of the documents that purportedly demonstrate the VA's disparate treatment of AvKARE provide nothing more than background information about one of AvKARE's competitors, Golden State Medical. See Pl.'s Mem. at 5–6. Two of these documents are media reports analyzing Golden State's business operations, see Pl.'s Suppl. Ex. 70, while a third is a chart created by AvKARE allegedly showing that the VA approved one of Golden State's modification requests in just a few days, see id. Ex. 4. These general background documents may show that Golden State and AvKARE are similar in some respects and different in others; but they provide an inadequate factual basis for assessing the VA's decision-making process with respect to Golden State, let alone inferring that it treated AvKARE differently based on bias or bad faith. See Beta Analytics, 61 Fed. Cl. at 226 (refusing to permit supplementation where plaintiff merely observed that CO scored its proposal differently than other proposals); Office Depot, 94 Fed. Cl. at 299 (denying supplementation where communications

already in the record purportedly demonstrated bias because the record provided a "clear picture" of the CO's actions).

Likewise, the declaration AvKARE has submitted that purportedly explains the VA's institutional motivation for requiring AvKARE to disclose CSP information provides only a high-level overview of the VA's operations. See Pl.'s Suppl. Ex. 2. At best, this high-level analysis provides context for the VA's policy choices—not the sort of "hard facts" needed to make a threshold showing that the VA's determinations in this case were made in bad faith. See Inforeliance, 118 Fed. Cl. at 748 (supplementation warranted where declarations discussed specific statements made by the CO indicating preference for one offeror); Pitney Bowes, 93 Fed. Cl. at 333 (permitting supplementation where affidavits supported plaintiff's allegations of bias in favor of a particular subcontractor).

Accordingly, because AvKARE has not made the necessary threshold showing of improper motivation or conduct, the Court will not supplement the AR to include the documents in the second and third categories.

Finally, although the exhibits to AvKARE's original pleadings are part of the record in this case, they are not needed to permit an effective review of the agency's decision, as they similarly relate to the reasonableness of AvKARE's prices or provide general background regarding VA policies. Accordingly, the Court will not supplement the AR to include the attachments to AvKARE's original pleadings.

## CONCLUSION

For the reasons set forth above, AvKARE's Motion to Supplement the Administrative Record is **DENIED**.

**IT IS SO ORDERED**.

    /s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge